IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMIEE S.,[1]                                          No. 2:24-cv-00804-JR

                Plaintiff,                    OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.


RUSSO, Magistrate Judge:

       Plaintiff Amiee S. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Title II

Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social

Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final

orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

ECF No. 4. For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

## PROCEDURAL BACKGROUND

Born in April 1974, plaintiff alleges disability beginning January 1, 2020, with a date last insured of September 30, 2021. Tr. 16, 18, 280-293. In her application, plaintiff alleged disability due to "memory fog, psoriatic arthritis, neck pain, bilateral shoulder pain, foot and knee pain, thyroid issues, depression, anxiety, and chronic pain." Tr. 316. Her application was denied initially and upon reconsideration. Tr. 100, 110, 218-25. On July 7, 2023, 2023, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Henry Kramzyk. Tr. 42-90. On August 22, 2023, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-41. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2020. Tr. 19. At step two, the ALJ determined plaintiff suffered from the following severe, medically determinable impairments ("MDI's"): "fibromyalgia, Sjogren's syndrome, psoriatic arthritis, diabetes mellitus, diabetic peripheral neuropathy, hypothyroidism, degenerative disc disease, gastrointestinal reflux disease ("GERD"), chronic obstructive pulmonary disease ("COPD"), obstructive sleep apnea, obesity, depression, anxiety, and somatic symptom disorder." Tr. 19. At step three, the ALJ found plaintiff's impairments did not meet or equal the requirements of a listed impairment. Tr. 19.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work, except she:

> can never climb ladders/ropes/scaffolds and can occasionally climb ramps/stairs, balance, stoop, crouch, kneel, and crawl. The claimant can occasionally handle with the left non-dominant hand and can occasionally reach overhead with the right dominant upper extremity. The claimant can have no more than frequent exposure to extreme heat, humidity, and to fumes, odors, dusts, gases, and pulmonary irritants. The claimant can have no more than occasional exposure to hazards such as dangerous machinery and unprotected heights. The claimant is able to understand, remember and carry out short, routine repetitive instructions. The claimant can sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on short, routine, repetitive instructions; and can use judgment in making work decisions related to short, routine, repetitive instructions. The claimant can have occasional contact with coworkers, supervisors, and the public. The claimant requires an occupation with set routines, procedures, and instructions with only occasional changes during the workday; can do work with no requirement to meet defined production quotas such as production line work; can maintain regular attendance and be punctual within customary tolerances; and can perform activities within a schedule.

Tr. 23.

At step four, the ALJ found plaintiff unable to perform any past relevant work. Tr. 31. At step five, the ALJ determined that plaintiff was capable of performing jobs existing in significant numbers in the national economy such as merchandise marker, routing clerk, and inspector/hand packager. Tr. 32. The ALJ therefore found plaintiff not disabled. Tr. 32.

## DISCUSSION

Plaintiff argues the ALJ committed four harmful errors in his written opinion. She contends the ALJ erred by (1) failing to identify plaintiff's urinary urge incontinence and fecal incontinence as severe impairments at step two, (2) failing to conduct an adequate evaluation of whether plaintiff's limitations met or equaled a Listing at step three, (3) discrediting her subjective symptom statements without clear and convincing reasons for doing so, and (4) failing

to conduct an adequate step five analysis. For the reasons that follow, the Court finds the ALJ did not err and affirms.

## I.    Step Two

At step two, the ALJ determines "whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). An impairment is severe "if it 'significantly limits' an individual's 'ability to do basic work activities.'" *Id.* (citing 20 C.F.R. § 404.1520(c)). The step-two severity analysis is a "threshold showing," *Yuckert*, 482 U.S. at 147, that serves to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account[.]" *Id.* at 153. In evaluating whether the claimant's impairments are severe, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

Step two is "a *de minimis* requirement that screens out only frivolous claims," *id.* at 843; thus, "properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Id.* at 844. The Ninth Circuit has emphasized that "[a]n ALJ may find an impairment or combination of impairments 'not severe' at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id.* (simplified); *accord* SSR 85-28 (explaining that ALJs must apply step two using "great care" by proceeding to step three if a clear determination cannot be made).

Plaintiff argues the ALJ erred by failing to acknowledge her urinary urge incontinence and fecal incontinence as MDIs at step two. Pl.'s Br. at 11-12. Plaintiff asserts this error was

harmful because the ALJ failed to consider the symptoms emanating from these limitations at steps three, four, and five. *Id.* The ALJ did not mention plaintiff's urinary or gastrointestinal issues at step two but considered these limitations in steps three and four. *See* Tr. 29.[2]

Even assuming that the ALJ erred in neglecting to list plaintiff's urinary urge incontinence and fecal incontinence at step two, any error was harmless. An ALJ's step two error is harmless when step two is decided in a claimant's favor and the ALJ considers plaintiff's limitations at subsequent steps. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error the ALJ committed at step two was harmless because the step was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four). Here, the ALJ resolved step two in plaintiff's favor, and extensively discussed plaintiff's incontinence at step three, determining that these impairments did not meet Listing 5.06, and when formulating the RFC. Tr. 24-25, 29. Any failure to discuss plaintiff's urinary urge incontinence and fecal incontinence is therefore harmless. *Cf. Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054–55 (9th Cir. 2006) (discussing harmless error analysis in the Social Security context).

## II.    Step Three

Plaintiff also contends the ALJ erred because he failed to properly assess whether her impairments met certain Listings at step three. Pl. Br., ECF No. 12 at 12-15. Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987). A mere diagnosis

---

[2] Plaintiff argues defendant "relies on impermissible *post hoc* rationalizations in an attempt to fill in the ALJ's omissions, as the ALJ failed to even mention these impairments at step two." Pl. Reply at 3. But plaintiff misconstrues defendant's position. Defendant argues there was no harmful error at step two because the ALJ thoroughly considered plaintiff's complaints of incontinence and the associated medical records at steps three and four. Def. Br. at 3-5. The ALJ's analysis is therefore appropriately part of the record for this appeal, and not a basis defense counsel came up with after the fact.

does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the Listing of that impairment.'" *Id.* at 1549-50 (quoting 20 CFR § 404.1525(d)) (emphasis in original). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Tackett*, 180 F.3d at 1099; s*ee also Sullivan*, 493 U.S. at 531(to establish equivalency, claimant "must present medical findings equal in severity to *all* the criteria" for the listing). The ALJ's analysis of whether a claimant's impairments meet or equal a Listing need not necessarily come in the "step three" portion of his or her opinion. To obtain remand, a claimant must not only demonstrate error in the listings analysis but must also show that the listing was met or equaled, based upon the evidence. *See Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020) (ALJ's mischaracterization in listings analysis did not warrant remand, where there was "ample evidence" in the record supporting the ALJ's conclusion that all of the listing criteria were not met).

Plaintiff argues the ALJ harmfully erred by neglecting to evaluate whether her fibromyalgia met Listings 14.09 and 14.10 and by failing to consider whether the combination of fibromyalgia with her other severe impairments medically equaled a Listing. Pl. Br. at 15-16.[3]

---

[3] Plaintiff's briefing does not address the Listing 14.10 criteria with any depth. *See* Pl. Br. at 12-15, Pl. Reply at 4-7. Because the ALJ addressed whether plaintiff's Sjögren's syndrome met or equaled Listing 14.10, and supported the analysis with substantial evidence, the Court does not disturb the ALJ's analysis concerning Listing 14.10.

Even assuming the ALJ erred, plaintiff has not shown such error was harmful. Absent identification of some medical evidence by plaintiff that she satisfies *all* the listing criteria—including the durational requirement—the ALJ's failure to discuss it is harmless error at best. *Molina*, 674 F.3d at 1115 (holding the court may not reverse for errors that are inconsequential to

SSR 12-2p addresses fibromyalgia and identifies Listing 14.09(D) for inflammatory arthritis as a

potentially analogous Listing for ALJs to consider. SSR 12-2p. Listing 14.09(D) requires

medical findings equal in severity to all of the following criteria:

> Repeated manifestations of inflammatory arthritis, with at least two of the
> constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary
> weight loss) and one of the following at the marked level:
>     1. Limitation of activities of daily living.
>     2. Limitation in maintaining social functioning.
>     3. Limitation in completing tasks in a timely manner due to deficiencies in
>        concentration, persistence, or pace.

Listing 14.09(D).

The ALJ adequately considered plaintiff's fibromyalgia at step three, so did not err. For a

condition to qualify as a listed impairment at step three of the sequential analysis, a claimant

must demonstrate that her condition meets "all of the specified criteria. An impairment that

manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493

U.S. at 530. Plaintiff contends that her fibromyalgia meets 14.09(D) because she suffers marked

limitation in both activities of daily living and completing tasks in a timely manner due to

deficiencies in concentration, persistence, and pace, resulting from a combination of physical and

mental limitations. Pl. Br. at 13-14. But plaintiff does not identify any medical evidence showing

she meets the other criteria of Listing 14.09(D). *See id.* While the ALJ provided minimal

reasoning about plaintiff's fibromyalgia in the step three portion of his opinion, he addressed

plaintiff's fibromyalgia-related limitations at length elsewhere. *See* Tr. 24-31. Plaintiff cites

several parts of the record that she believes supports the conclusion but is trying to have this

---

the ultimate nondisability determination); *Marsh v. Colvin*, 792 F.3d 1170, 1172–73 (9th Cir.
2015) (reviewing court may not reverse for harmless errors unless the court can "confidently
conclude that no reasonable ALJ ... could have reached a different disability determination).
Here, the ALJ found other medical evidence of the listing criteria lacking, and the ALJ's failure
to provide additional detail as to why plaintiff does not meet Listing 14.10 would be superfluous.
Thus, any alleged error at step three is harmless.

Court re-weigh the record, which is beyond the scope of review. *See* Pl. Br at 14-15; *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Substantial evidence supported the ALJ's conclusion that fibromyalgia did not meet the rigorous requirements of Listing 14.09D, and the Court will not disturb it at plaintiff's invitation. 20 C.F.R. Part 404, Subpart P, Appendix 1, 14.09D.

Plaintiff's contention that her impairments in combination equal Listing 14.09D is also without merit. As the Ninth Circuit has recognized, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *See Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020) (confirming that "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence"). At the hearing, plaintiff did not advance any argument as to how her impairments combine to equal Listing 14. Tr. 42-90. Given that plaintiff did not advance such an argument to the ALJ, the ALJ did not err in failing to consider it. *Kennedy*, 738 F.3d at 1178 (rejecting contention that ALJ erred in failing to consider equivalency argument when equivalency not presented to ALJ). Because substantial evidence supported the ALJ's consideration of plaintiff's fibromyalgia, the Court finds no harmful error.

## III.    Symptom Testimony

Plaintiff also contends the ALJ erred by discrediting her subjective symptom testimony without clear and convincing reasons for doing so. Pl.'s Br., ECF No. 11 at 15-19. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of

malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified about her inability to continue working due to bulging discs in her lower back, fibromyalgia, diabetes, bilateral carpal tunnel syndrome, arthritis in her neck, psoriatic arthritis, an autoimmune blistering disease, Sjogren's disease, bilateral shoulder issues, COPD, GERD, gastroparesis, EPI, and hypothyroidism. Tr. 60-62. She described her severe depression resulting from her medical problems and constant pain, which manifested as an electrical pins and needles sensation, muscle cramps, muscle spasms, and stabbing pains that

can send her to the emergency room. Tr. 62-63. She took medications for her Sjogren's, fibromyalgia pain, COPD, psoriatic arthritis, depression, diabetes, GERD, hypothyroidism, allergies, high cholesterol, digestion problems, and new autoimmune disease. Tr. 63-64. Her medication caused side effects of headaches, nausea, double vision, tiredness, and unintentional napping, which is worsened by her severe sleep apnea. Tr. 64.

Plaintiff spent multiple years in physical therapy. Tr. 65. She testified that she could not lift or carry anything heavier than a gallon of milk, would need to stop for a break after standing or walking for a couple of minutes, could not sit for longer than five to 10 minutes or use her hands for more than a couple of minutes due to muscle cramping and freezing, limiting her ability to write and text. Tr. 64-66, 72-73. In terms of activities, plaintiff testified she could not perform household cleaning, cooking, or laundry, or go shopping for groceries. Tr. 66-67. She needed help from her daughter with bathing. Tr. 67. She only drove to appointments and the pharmacy, which are within 15 minutes of her home. Tr. 68.

Plaintiff also testified about urinary and fecal incontinence, resulting in the need to have a bathroom in close proximity to her. Tr. 68, 76-77. Medication was ineffective and she had ongoing difficulty identifying the root cause of her incontinence. Tr. 68-69. Plaintiff did not participate in  social activities outside of her family's apartment, and had difficulty concentrating, resulting in no longer reading like she used to. Tr. 69. Plaintiff testified to suffering constant pain, with an additional half-dozen pain flare ups per month due to her conditions, each of which lasts a day or two. Tr. 71. During flares of pain, plaintiff could not do anything except lie down in bed and manage her symptoms, with the need to reschedule appointments on such days. Tr. 71-72. She also testified about electrical-type pains radiating from her neck down to her arms and hands, usually caused by her turning her head, and the need

to face straight ahead with her head held upright due to torticollis. Tr. 73-74. Plaintiff needed to alternate between reclining with her feet elevated to relieve lumbar pain and getting up to move around a little bit to keep her legs from falling asleep. Tr. 74-75. Since 2020, plaintiff spent half her day reclining and took daily naps due to extreme tiredness from medications. Tr. 76-77. Plaintiff could no longer care for her grandchildren and relied on her daughter to help care for herself. Tr. 77-78. Plaintiff also suffered from dry mouth and tearing of her cornea due to dryness from Sjogren's. Tr. 78.

      The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 25. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 25. Specifically, the ALJ discounted certain limited aspects of plaintiff's symptom allegations because they conflicted with objective medical evidence in the record, and other evidence of her and daily activities. Tr. 25-27.

      The ALJ reasonably discounted plaintiff's allegations of fibromyalgia pain, overactive bladder, and decreased strength and range of motion as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, plaintiff testified to "constant" pain, dry eyes, and urinary incontinence. Tr. 70-76. The ALJ cited several medical records that conflicted with this testimony and supported his decision to (somewhat) discount plaintiff's allegations. For example, concerning plaintiff's allegations of overactive bladder the ALJ acknowledged her allegations of urinary frequency (Tr. 24-25), but observed that a cystoscopy showed no abnormalities and plaintiff's physician indicated this may simply be

reflective of an overactive bladder or excess caffeine consumption. Tr. 26 citing Tr. 2190.

Likewise, the ALJ reasonably contrasted plaintiff's allegations of pain stemming from

fibromyalgia and psoriatic arthritis with evidence that she was in no acute distress, and she was

rarely observed to appear uncomfortable. Tr. 25-27 citing, e.g., Tr. 1613, 2801, 2811, 2820.

Indeed, as the ALJ pointed out, the record indicates some work limitations from degenerative

disc disease, but plaintiff's examinations generally revealed a normal gait, full range of motion in

her extremities, intact strength, and intact sensation. Tr. 26-27 (citing, e.g., Tr. 1613, 1689, 1763,

2801-02). Furthermore, the ALJ acknowledged that while some examinations demonstrated

tender points, consistent with a diagnosis of fibromyalgia (Tr. 26 citing Tr. 2801-02), others

showed no joint tenderness or tenderness in the spine. Tr. 27 citing Tr. 1613, 2846, 285. And

finally, the ALJ cited medical records suggesting plaintiff's dry eyes were "mild" and well-

controlled by medication. Tr. 26. In sum, the ALJ cited several aspects of the objective medical

record that conflicted with plaintiff's allegations of physical symptoms.

The ALJ reasonably cited objective medical evidence that undermined plaintiff's

testimony about pain flare-ups, limited strength, and medication side effects as well. For

example, the ALJ pointed out that while plaintiff testified to frequent flares of joint pain, she had

recently denied any joint pain to her treating provider, her examination did not find any joint

swelling, and her joint issues were reportedly stable with medication. Tr. 25 citing Tr. 2853; see

also Tr. 1477-79, 1485-86, 1656, 1925-26. While plaintiff testified she could stand for only a

couple minutes, she consistently had a normal gait on examination. Tr. 25 citing Tr. 2801, 2811,

2820. Plaintiff also testified to significant medication side effects, yet she generally denied

medication side effects to treating providers. Tr. 26 citing Tr. 2850; Tr. 26n.1; see also Tr. 1477-

79, 1925-26. Plaintiff further testified that she must lie down for extended periods due to flares

of pain, but the ALJ noted that the medical record does not indicate she ever suffered from so significant a flare-up. Tr. 26. This was all further substantial evidence the ALJ cited to support the decision to discount plaintiff's subjective symptom testimony.

The ALJ also supported his decision to discount plaintiff's allegations of mental limitations with substantial evidence of conflicts with objective medical records. Despite plaintiff's testimony about memory fog and difficulty concentrating, the ALJ noted the objective medical evidence in the record showed she was able to follow simple and complex commands, had no apparent memory deficits, and had normal mood and affect. Tr. 22, 30 (citing Tr. 2085, 2220, 2253, 2283, 2291. The ALJ further contrasted plaintiff's testimony about depression and anxiety with a history of "normal mental status findings," "normal mood and affect," and "intact cognitive functioning." Tr. 30. Indeed, plaintiff does not specifically challenge the ALJ's conclusions about her mental health allegations on appeal. *See* Pl. Br. The Court finds the ALJ supported the decision to discount testimony about mental health limitations for conflict with substantial evidence in the record.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her own statements about daily activities. Tr. 25-26. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations.

*Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her or her credibility).

The ALJ failed to identify any daily activity that conflicted with her allegations about physical limitations. To discount a plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ highlighted plaintiff's testimony that "she could dress herself and can perform personal care but does not perform household chores and relies on others to perform grocery shopping." Tr. 25. The ALJ contrasted this testimony with other evidence that plaintiff "could drive short distances, indicating that she can perform some tasks independently." Tr. 25. But the ability to drive a short way does not contradict plaintiff's testimony that she cannot do household chores or go grocery shopping for herself. Tr. 76. Nor does the ALJ cite any other daily activity that would count as a "transferable work skill." Tr. 25-27. Because the ALJ failed to cite daily activities that stand alone as work skills, or contradict plaintiff's testimony, this was not a clear and convincing reason for the ALJ to rely upon to discount her testimony.

The ALJ's error was harmless, however, because he identified a separate, sufficient basis to discount plaintiff's subjective symptom testimony. *See Molina*, 674 F.3d at 1115 (holding ALJ's error "harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

Therefore, although the ALJ erred in finding plaintiff's daily activities undermined her symptom testimony, that error was harmless.

## IV.    Step Five

Plaintiff first argues the ALJ erred at step five because the training period required by the representative jobs available in the national economy necessarily conflicted with the interpersonal contact limitations in the RFC. Pl. Br. at 19-22. At step five of the sequential analysis, the burden of proof rests with the Commissioner to establish whether other work exists in the national economy that an individual of the claimant's age, education, work experience, and RFC can perform. *See* 20 C.F.R. § 416.969; *Tackett*, 180 F.3d at 1099. In making this finding, an ALJ relies "primarily" on the Dictionary of Occupational Titles (DOT) for information about the requirements of other work in the national economy. Social Security Ruling 00-4p. An ALJ may also rely on a vocational expert ("VE") as a source of occupational evidence. *Id.* A VE's testimony is "one type of job information that is regarded as inherently reliable." *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). The VE's testimony is substantial evidence and no additional foundation beyond the VE's recognized expertise is required. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

At the hearing, the ALJ asked the VE to consider a hypothetical individual fitting plaintiff's vocational profile, who could perform light work with various additional limitations including, in relevant part, occasional interaction with supervisors, coworkers, and the public. Tr. 82-84. The VE specifically testified that notwithstanding these limitations, this individual could perform work as a merchandise marker, routing clerk, or inspector hand packager. Tr. 84-85. The VE  testified the occupations identified were unskilled with a specific vocational preparation (SVP) level of 2. Tr. 84-85. An SVP of 2 correlates to unskilled work, defined as "work which

needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568. Training for these jobs involves "[a]nything beyond [a] short demonstration up to and including 1 month." DOT App. B, Specific Vocational Preparation. P. At the hearing, plaintiff proposed a hypothetical individual to the VE who could not complete training time, to which the VE responded, "if they couldn't participate in the training, they could not hold down the job." Tr. 88-89. Plaintiff extrapolates that because the RFC limits plaintiff to "occasional contact with coworkers, supervisors, and the public," she would be unable to complete training for the jobs the ALJ identified in the national economy, and the Court should accordingly reverse the decision and award benefits. Pl. Br. at 18-20.

Plaintiff's contention does not undermine the substantial evidence supporting the ALJ's step five conclusion about work existing in the national economy. As indicated above, VE testimony is "inherently reliable," and a source of substantial evidence ALJs may rely upon to make a step five determination. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Plaintiff does not directly contest the VE's testimony that she could perform the representative jobs given her RFC. Tr. 82-84. She instead contends that an individual who cannot interact with supervisors more than one-third of the time would be unable to maintain competitive employment because she could not complete training required for jobs the VE identified. Pl. Reply at 13 (citing Tr. 88-89). But plaintiff provides no evidence that the training period for any of these unskilled jobs would require more than occasional interactions with supervisors. *See* Pl. Br., Pl. Reply. Nor does that seem likely, given that all three are SVP 2. To find this plaintiff per se unable to complete the brief training period for the SVP 2 occupations at issue would be particularly inappropriate considering the facts of this case. Plaintiff did not testify to any significant difficulties getting along with others (Tr. 69-70); she indicated that she got along with

authority figures "just fine most of the time" (Tr. 390), and the State agency psychological consultants concluded she had no limitation in her ability to interact with supervisors. Tr. 97-98, 107-08, 119, 131. Absent some evidence contradicting the VE's well-founded testimony, the Court finds the ALJ reasonably relied on the VE conclusion that plaintiff could perform the representative jobs in the national economy given her RFC.

Finally, plaintiff argues the ALJ's hypothetical question to the VE did not include additional "well-supported" limitations and notes that VE testimony indicated these limitations would be work-preclusive. Pl. Br. at 20. As discussed above, however, the ALJ reasonably rejected plaintiff's version of these limitations, and supported the decision to do so with substantial evidence. This step five argument merely rehashes plaintiff's prior arguments about plaintiff's symptom testimony and the medical record and therefore fails for the reasons previously articulated. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."). Because plaintiff's step five argument adds nothing new, the Court finds the ALJ did not err at step five.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed, and this case is dismissed.

IT IS SO ORDERED.

DATED this 3rd day of February, 2025.


 /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge